**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Michelle L. Keske,

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil File No. 00-1275 (MJD/JGL)

Minnesota AG Group, Inc. and
Larson Implement, Inc.,

Defendant.

---

Paul J. Lukas, Nichols, Kaster & Anderson, on behalf of Plaintiff.

Mary M.L. O'Brien, Amy J. Swedberg, Meagher & Geer, P.L.L.P., on behalf of Defendant.

---

This matter is before the Court on Defendant's motion for summary judgment. Plaintiff filed this employment discrimination suit alleging reprisal discrimination, sexual harassment, and wage discrimination under the Minnesota Human Rights Act, and sex discrimination under Title VII. Based on a review of all the files, records, and proceedings herein, the Court GRANTS Defendant's motion for summary judgment on the claim of reprisal discrimination. The Court DENIES Defendant's motion for summary judgment on the remaining claims.

**Background**

Defendant Larson Implement, Inc. ("Larson") is a small farm machinery



FILED MAY 09 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

dealership in Northfield, Minnesota. Defendant Minnesota AG Group, Inc. ("MAGI")[1] owns Larson and three other dealerships in the state. Plaintiff Michelle Keske ("Keske") was employed by Defendants from May 12, 1995 to February 16, 1999. Although she was initially hired as a part-time receptionist, her duties expanded to cover much of the office administration, including some aspects of payroll, accounts payable, accounts receivable, fleet management, title transfer, staff training, support and other duties. Keske received an hourly wage, starting at $8/hour and topping out at $12.50/hour. She worked an average of 32 hours per week, and received overtime pay if she worked more than 40 hours in a week. In 1999 she received a $1,000 bonus to reflect her additional duties and good performance.

Keske worked along side two male employees, Jeff Telstad and Allen Krueger. Telstad, MAGI's Warranty Administrator, received $37,000/year salary in 1999. Krueger, MAGI's Parts manager, received $40,000/year salary in 1999.

Plaintiff asserts that in January, 1999, her supervisor, Doug Johnson, initiated a conversation regarding his personal problems and then requested that she give him a hug. She declined, and left the room immediately when the accounting manager walked in the door.

Keske also alleges that Johnson continually pried into her personal life, inquiring about her relationship with her husband and her pregnancies. She says he made suggestive comments about her, pulled loose hairs off her clothes (including, on one occasion, pulling a hair off her buttock) and leered at her. On one occasion he made a

---

[1] Defendants are collectively referred to as "MAGI".

joke about reading fortune cookie messages and ending the message with the phrase "between the sheets." She also charges that he winked at her once during a job performance appraisal.

A few weeks after the request for a hug, Plaintiff informed Johnson that she had received an offer for employment as a financial analyst at another company, at a higher salary. Johnson asked if he could think about the matter for one hour, and maybe offer her more money to stay. He called back in one hour and asked for one more day to consult with the management about a raise. Plaintiff agreed. Johnson called Plaintiff the next day, Saturday, at home, and offered her a $1.00 per hour raise. Plaintiff was insulted by the offer because it was no more than the standard annual increase she was due to receive that month. She turned down the offer and tendered her two week notice.

Plaintiff did not complete her two week notice term, instead leaving after two days. She wrote a letter to one of MAGI's owners, stating that she was not leaving for personal reasons, as Johnson was telling the other employees, but because of how Johnson handled her salary negotiation. She wrote that she had been ignored over the last few days and it had been "hard on [her] emotionally." She also wrote to Johnson, saying the last few days had been "emotionally difficult and awkward". She wrote that she felt "hurt that you couldn't take enough time out of your schedule to try and meet what I needed to stay on board." She felt "under-appreciated," and ended by stating: "All I asked for is to be compensated in the same manner my colleagues were."

Plaintiff then filed this complaint, alleging sexual harassment, wage discrimination and retaliatory discharge under the Minnesota Human Rights Act, and

sexual discrimination under Title VII.

## Standard

Summary judgment as a matter of law is appropriate when no genuine issue of material fact exists in the record. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). A fact is material if resolving disputes concerning that fact affects the outcome of the case. See Anderson, 477 U.S. at 248. A dispute is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. See id. at 252. On a motion for summary judgment, the Court views all evidence and inferences in a light most favorable to the nonmoving party. See id., 477 U.S. at 250. The moving party carries the burden to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(b); Celotex, 477 U.S. at 323.

## Analysis

Retaliatory Discharge/Reprisal Discrimination

The Minnesota Human Rights Act ("MHRA") prohibits an employer from intentionally retaliating against a person who opposed a discriminatory practice. Minn. Stat. §363.03, subd.7. The three-part McDonnell-Douglas burden shifting procedure applies to retaliation claims under the MHRA as well as Title VII suits. See Hasnudeen v. Onan Corp., 552 N.W.2d 555, 556-57 (Minn. 1996). Once the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer meets this burden, the employee then must show that the employer's proffered reason is pretextual. See id.

To establish a prima facie claim of reprisal, a plaintiff must demonstrate that: (1) she engaged in statutorily protected conduct; (2) adverse employment action was taken against her; and 3) a causal connection exists between the two. See Zellmer v. Koch Refining Co., 1997 WL 405484, *6 (D.Minn. 1997).

In this case, Keske is unable to establish a prima facie claim of reprisal. While her rejection of Johnson's advances could be deemed statutorily protected conduct under Minn. Stat. §363.03, subd.7 (1), Keske has not demonstrated that any adverse employment action taken against her was causally related to that rejection.

Keske argues that the adverse employment action was her constructive discharge after she rejected Johnson's advances. Constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994). If the employee reasonably believes there is no chance for fair treatment, there has been a constructive discharge. See Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir. 1997). The standard is an objective, "reasonable person" one. See Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981). An employee must give an employer a reasonable amount of time to resolve a problem before quitting. See West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995).

Plaintiff asserts that she was "constructively discharged" because her working environment became so intolerable that she believed there was no chance for fair treatment. For support she points to Johnson's alleged sexual advances, the differential between her pay and that of her male office mates, and her employer's failure to match her outside job offer.

The Court notes first that Keske has not demonstrated that MAGI's action were taken with the intention of forcing her to quit. See Bunny Bread, 646 F.2d at 1256 (holding that constructive discharge requires proof of intentional conduct by employer). If the protected conduct was the rejection of the sexual advances, then the only action taken by MAGI which occurred after that was the failure to offer Keske enough money to induce her to stay. Keske has offered no proof that this failure was an attempt by MAGI to force her to quit.

Even if the Court assumes, without deciding, that there was a constructive discharge, Plaintiff has not demonstrated a causal relationship between the rejection of Johnson's advances and MAGI's failure to offer her enough money to induce her to stay. Keske has presented no evidence that anyone at the company other than Johnson knew of the rejected advances. She has not contested Defendant's assertions that the counteroffer was authorized by MAGI, not Johnson. MAGI did, the Court notes, offer her more than she was making at the time, although not as much as Plaintiff felt she deserved. As to the temporal connection between the two events, the Court notes that Plaintiff initiated the second event when she informed MAGI that she had received a better job offer. Plaintiff has not demonstrated that MAGI's failure to offer her a sufficiently large raise to match that offer was connected to Johnson's request for a hug.

Because Plaintiff is unable to establish a prima facie case of reprisal discrimination, the Court finds that summary judgment is appropriate on this claim.

Sexual Harassment, Wage Discrimination

Defendants also move for summary judgment on Plaintiff's claims of sexual harassment and wage discrimination. The Court finds that issues of material fact remain which preclude an award of summary judgment on these claims.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment on the claim of reprisal discrimination is GRANTED;

2. Defendant's Motion for Summary Judgment on the remaining claims is DENIED.

Dated: May 9, 2001.

Michael J. Davis
United States District Court Judge

Keske v. Minnesota AG Group, Inc.
and Larson Implement, Inc.
Civil No. 00-1275

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd